DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306787
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Cole Evan White**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:18-mj-71386-MAG |
| Plaintiff, | **MR. WHITE'S OPPOSITION TO THE GOVERNMENT'S PROPOSED DETENTION ORDER** |
| v. | |
| COLE EVAN WHITE, | |
| Defendant. | |

Mr. White opposes the government's proposed detention order (attached as Exhibit A) as follows: (references are to page and line of government's proposed order dated October 16, 2018).

1.      Page 1, lines 24-26.  The order does not express the grounds upon which the government sought detention at the initial appearance.  The government, when seeking detention, is required to set forth the basis for why it believes detention is appropriate.  Counsel was not at the initial appearance and is unaware whether the government complied with this requirement, and, if so, what bases the government set forth.

2.      Page 2, lines 2-3.  The recommendation of pretrial services is irrelevant to the Court's finding.  If the Court wishes to rely on any piece of the recommendation of Pretrial

Services, the detailed recommendation should be placed in the public record, together with all of the alleged facts set forth in that recommendation. As detailed in Mr. White's proffer on October 15, 2018, many or most of the assertions by Pretrial Services regarding alleged flight risk and alleged danger to the community were inaccurate, misleading or false. Dkt. 16, 5-40. Further, potential danger to the community is irrelevant. It is necessary for the Court to determine whether the government has shown by clear and convincing evidence that no condition or combination of conditions would assure that Mr. White is not a danger to the community. Any opinion by Pretrial Services that Mr. White is a "potential danger to the community" is particularly unhelpful in this regard, especially without any referral to the facts or details in the report.

3.      Page 2, lines 4-12. Mr. White objects to the government's characterization of the defense argument. The defense argument speaks for itself. The proffer is contained at pages 5-40 of the transcript. It rebuts, line by line, the misleading and false allegations in the report of Pretrial Services, and in the indictment. At no time did the defense use the words "excused by self-defense or mutual combat." At no time did the defense argue that Mr. White's hands were behind his back at all times. The defense argued that the National Geographic video is the most detailed and best to show the context of the activity surrounding the government screenshots relating to the Charlottesville rally. The Court refused to view the video. The defense proffered that, in context, the National Geographic video shows that Mr. White and his group were rushed by violent counter-protesters at a time that they were peacefully marching, two by two, having received a lawful permit to demonstrate, and with the specific purpose of not engaging. The defense further proffered that, during the time that Mr. White and his co-marchers were rushed their hands were largely behind their backs. Mr. White would not have argued that in the government screen-shot, taken out of the full context, one of Mr. White's hands, or one of them,

was behind his back, because in those particular screenshots, his hands were briefly free.  What is important, the defense proffer continued, is to look at the entire video.  The defense did not believe, and still does not, that isolating the screenshots from the video presented by the government is the appropriate manner in which to determine what occurred.  Further, the defense proffered that Mr. White engaged in two head-butts, one with a man and one with a woman.  The defense argued that these two head-butts, standing alone, when looking at a 24 year old man with no prior record, no substance abuse issues, no history of mental illness, stable employment in San Francisco, and a full time student at work who engaged in no untoward activity in the 14 or 15 months after the Charlottesville rally, could not possibly support the notion, by clear and convincing evidence that *no condition or combination of conditions could possibly assure the safety of the public from future head-butts or other assaultive conduct.*

4.      Page 2, line 12.  Mr. White never referred to his three international trips as "recent travel."  One of the trips was in 2014, one in 2016, and the third in 2017.  These were not "recent" trips.  The defense proffer does, in detail, set forth exactly what occurred on each trip.  Dkt. 16, 5-40.

5.      Page 2, lines 13-14.  In order to have a record, if the Court is to rely on any portion of the detailed report of pretrial services, which is not in the public record, there needs to be a mechanism to incorporate the report or the parts of the report to which the Court refers so we can have a record.  This is particularly so in this case where the defense was asked to, and agreed, to first proffer and structured the proffer around the inaccuracies, misrepresentations and falsehoods set forth in the report of Pretrial Services.

6.      Page 2, lines 19-26.  Government Exhibit 2 is blurry and does not show Mr. White "swinging a torch as an apparent weapon."  As the defense proffered, during the torch-march,

1   Mr. White was stabbed.  Mr. White explained this (that he was stabbed during the torch March)

2   on the video or audio of his statement to the FBI, a video/audio which has not been produced to

3   the defense in spite of the defense request.  He then stated that he swung the torch in order to

4   defend against the stabber.  The entire statement relating to the stabbing and the torch is absent

5   from the FBI 302, and the government chose to describe it, out of context, in its proffer.  As to

6   the repeated assertion by the government that Mr. White's position is that at the time of the

7   screenshots submitted by the government, showing but a portion of the conduct involving the

8   headbutt, that the defense claims his hands were behind his back, once again, as described in

9   detail above, the defense does not make this claim.  The defense implored the Court to look at

10  the entire context of the rushing of Mr. White and his co-Marchers by the counter-protestors,

11  how they were attacked, how the woman who was allegedly head-butted eagerly jumped back

12  into the fray, and how the hands of Mr. White were pinned behind his back during much of the

13  encounter.

14          Further, the government is incorrect that the devices possessed by Mr. White were

15  "weapons" and there is no "long metal screw" in any "improvised" device.  There is no evidence

16  that any of the items the government claims are weapons were not possessed for legitimate

17  purposes.  None of these items are illegal, and there is absolutely no evidence that they have been

18  or would ever be used illegally.  They have all been seized by the government.  Of course, the

19  defense proffer and the government's counter-proffer are directly at odds and demonstrate clearly

20  conflicting assertions of what the evidence would show as to material facts that the government

21  and the Court are using as a substantial basis of their assertion that there is clear and convincing

22  evidence that no condition or combination of conditions can assure the safety of the community.

23  Therefore, an evidentiary hearing is required before the Court can make any findings of fact in

this regard.   *United States v. Winsor*, 785 F.2d 755 (9th Cir 1986).  For the Court, based upon the proffer and counter-proffer to make any finding of fact in connection with these alleged lawful items found by the government when it executed a search warrant on Mr. White at 6:00 a.m., approximately 14 months after the Charlottesville rally, would be error.

7.       Page 2, lines 27-28, page 3, lines 1-7.  The ties between Mr. White and the Western District of Virginia are not relevant.   Mr. White has strong ties in the Clayton community, in Contra Costa County, where he has lived his whole life.  A proposed condition of release was that Mr. White would continue to live with his father in Clayton, and that his father would act as custodian.  Further, his father would fly with him to Charlottesville and back for any and all court appearances.  The government's (and, apparently, the Court's) view that Mr. White has proposed that he be released and live in Charlottesville is absurd and completely at odds with everything presented by the defense.  The fact that Mr. White has "the ability and inclination to travel" like every one of the more than 330 million people in the United States is irrelevant.  What is relevant is whether an ankle monitor or other travel restrictions, a parental custodian, a secured bond with more than $500,000 of equity, strong community ties, a lack of prior record, and the only issue being the detailed discussion of two rallies attended in 2017 in Berkeley and Charlottesville, and a surrendered passport, and his strong ties to the community (more than 15 people who are family and friends have attended every court appearance) would assure that Mr. White does not "flee."

There is absolutely no evidence that "substitute travel documents can be obtained that facilitate foreign travel."  There is absolutely no evidence that Mr. White could obtain such documents.  This bald, ludicrous assertion by the government would apply in each and every case before this Court.  Nobody could be released because they could, somehow, obtain fake travel

documents and disappear to a foreign country where they could easily live for the remainder of their days.

In this regard, as set forth in detail in the defense proffer, and in no way rebutted by the government, Mr. White does not have "significant personal relationships abroad." He has no family abroad, and met some friends when he studied abroad.  The defense proffered in detail the limited nature of his brief meetings, for a total of eight hours in his life and a few communications on Instagram, with "one woman in the Czech Republic."  This "woman" is not someone who has a "relationship" with Mr. White, let alone a significant one.  The idea that Mr. White has the means, contacts or abilities to travel abroad with fake documents – that would avoid border authority and law enforcement detection - and live abroad and be financed there is a fantasy.  If the Court is to make such a factual finding, *Winsor* requires an evidentiary hearing.  The current record is a defense detailed proffer explaining why these assertions about his ties abroad are incorrect, misleading or false, and no counter-proffer by the government.  Even if the conclusory statements by the government are to be considered a "proffer" *Winsor* requires an evidentiary hearing prior to the Court relying on these "facts" to support detaining a 24 year old United States Citizen, who is a Senior at SF State, and who has not used any "weapon" other than his head on two occasions within a few seconds of one another while being rushed by angry counter-protestors at a rally more than 14 months ago, and who punched back at two men who rushed him at a rally more than 18 months ago, with no bail whatsoever.

8.      Page 3, lines 8-11.  For the reasons set forth above, the Court, if it is to rely on any of the inaccurate, misleading and/or false assertions in the Pretrial Services Report, should specifically detail which assertions, and provide a mechanism so we can have a record of the confidential report for review.  Further, to the extent the Pretrial Services Report is materially at

odds with the detailed facts in the defense proffer at pages 5-40 of the October 15, 2018 detention hearing, *Winsor* requires that the Court order an evidentiary hearing prior to any factual findings being made.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: October 17, 2018

By:/s/David J. Cohen
 DAVID J. COHEN, ESQ.

Attorneys for Defendant **Cole Evan White**

**EXHIBIT "A"**

1   ALEX G. TSE (CABN 152348)
    United States Attorney
2
    BARBARA J. VALLIERE (DCBN 439353)
3   Chief, Criminal Division

4   PHILIP J. KEARNEY (CABN 114789)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, 11th Floor
6       San Francisco, CA 94102
        Telephone: (415) 436-7023
7       Fax: (415) 436-7234
        E-Mail: philip.kearney@usdoj.gov
8   Attorneys for United States of America

9

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                            OAKLAND DIVISION

13
    UNITED STATES OF AMERICA,          )   No.  4:18-MJ-71386-MAG
14                                      )
            Plaintiff,                  )
15                                      )   **[PROPOSED] ORDER DETAINING**
            v.                          )   **DEFENDANT COLE EVAN WHITE**
16                                      )
    COLE EVAN WHITE,                    )
17                                      )
            Defendant.                  )
18                                      )
                                        )
19  _____)

20          On October 2, 2018, Cole Evan White and three alleged co-defendants were arrested at various

21  locations throughout California on a criminal Complaint issued by the Western District of Virginia

22  alleging one count of Conspiracy to Riot in violation of 18 U.S.C. § 371 and one count of Riots in

23  violation of 18 U.S.C. § 2101.[1]  On the same date, the government filed a *Notice Of Proceedings On*

    *Out-Of-District Criminal Charges Pursuant To Rule 5(C)(2) and (3) of the Federal Rule Of Criminal*
24
    *Procedure*.  Dkt. 1.  At defendant White's initial appearance in this Court on October 3, 2018, the
25
    Government sought his detention pending trial.
26

27
    _____
28  [1]On October 10, 2018, the same four men were indicted for the same offenses in the Western District of
    Virginia (Criminal Number: 3:18CR00025).

On October 15, 2018, the Court held a pre-trial detention hearing.  The U.S. Pretrial Services Office recommended that the defendant be detained pending trial based on his potential danger to the community.

During the detention hearing, defense counsel argued that defendant could be released on a secured bond, asserting that defendant did not have a significant history of violence beyond his involvement in 2017 demonstrations in both Berkeley, California, and Charlottesville, Virginia. Defense counsel further argued that the 2017 acts of violence were largely excused based on self-defense or mutual combat.  Defense counsel highlighted the fact that weapons taken from defendant's home (a machete, knife with Nazi insignia, asp-type baton, and improvised hand-held devices) were either legally possessed or intended for use as skateboarding or work-related tools.  Regarding the defendant's potential as a flight risk, defense counsel argued that the defendant's passport had been surrendered to Pretrial Services and that his recent international travel was lawfully conducted.

The government argued the defendant should be detained for the reasons described in the report prepared by Pretrial Services and also because the defendant posed a serious risk of flight.  Regarding the defendant's danger to the community, government counsel submitted eleven photographic exhibits into evidence during the Hearing.  These exhibits captured aspects of the defendant's participation in a "tiki torch" march in Charlottesville on August 11, 2017, his participation in a "United The Right" rally the next day in the same City, and the various alleged weapons taken from his home on the day of his arrest, October 2, 2017.  Significantly, Exhibits 2, 4, 5, and 6 show defendant personally engaging in acts of violence, including swinging a torch as an apparent weapon and head-butting a female counter protester.  Regarding this latter incident, the Court specifically rejected the defendant's assertion that at the time of this head-butt, his hands were restrained behind him and that he was acting in self-defense. Clear photographic proof directly contradicts this assertion.  The Court further rejects the assertion that the improvised hand-held devices referenced above—including a short section of pipe with a long metal screw inserted and an apparent razor blade encased in another short section of pipe—were possessed by the defendant for legitimate purposes.

Regarding the defendant's potential risk of flight, the Court notes that no evidence was introduced at the detention hearing to demonstrate any ties between the defendant and the Western

District of Virginia.  Further, evidence that in the last four years the defendant made three separate trips abroad to several different European countries (in addition to his documented trip to the State of Virginia) reflects his ability and inclination to travel.  The defendant has no apparent significant employment or assets.  Evidence adduced at the hearing also indicated that the defendant has significant personal relationships abroad, including one with a woman in the Czech Republic.  Despite the defendant's surrender of his passport, substitute travel documents can be obtained that facilitate foreign travel.

After hearing from both parties and considering the report prepared by U.S. Pretrial Services, the Court finds that the defendant represents both a danger to the community and a flight risk for the reasons described in the report by Pretrial Services and the additional information provided by counsel for the government.

### **ORDER**

For the reasons stated on the record during the October 15, 2018 detention hearing and further stated in this Order, the Court orders the defendant detained and transported to the Western District of Virginia as no condition or combination of conditions will reasonably assure the community's safety or reasonably assure his appearance as required.  *See* 18 U.S.C. § 3142(c).  Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  *See* 18 U.S.C. § 3142(i)(2).  Defendant must be afforded a reasonable opportunity to consult privately with counsel.  *See* 18 U.S.C. § 3142(i)(3).  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver defendant to the United States Marshal for a court appearance.  *See* 18 U.S.C. § 3142(i)(4).

**IT IS SO ORDERED.**

DATED: October _____, 2018

_____
HON. KANDIS A. WESTMORE
United States Magistrate Judge